# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES ROSS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 05 C 2797** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **JUDGE AMY ST. EVE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Charles Ross, filed suit, *pro se*, against the district court judge, the two prosecutors, the five postal inspectors, and three of his attorneys who were involved in the search of his apartment and his subsequent arrest, prosecution, and sentencing for his involvement in the armed robbery of a postal truck. The Court *sua sponte* dismissed the claims against the district court judge, the prosecutors, and the defense attorneys. *See* May 25, 2005, Order. Presently pending before the Court is the remaining five postal inspectors' motion for summary judgment. For the reasons stated in this order, the motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. *See Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence, that a genuine issue of material fact exists that requires a trial. *See Hemsworth*, 476 F.3d at 490.

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
> > (3) a concise response to the movant's statement that shall contain:
> >
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the

summary judgment process); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994); *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, *4 (N.D. Ill. Aug. 23, 2002) (Pallmeyer, J.). Despite being given this notice, Plaintiff's response to Defendants' motion is deficient. Plaintiff filed a response to the Defendants' proposed local rule 56.1 statement of uncontested facts in which he attempts to dispute most of the proposed undisputed facts. However, contrary to Local Rule 56.1(b)(3), Plaintiff fails to support his disagreement with the proposed undisputed facts with any specific references to the affidavits, parts of the record, or other supporting materials that he is relying on to dispute the proposed undisputed facts.

For example, Defendants' proposed undisputed fact No. 3 states that a magistrate judge found that probable cause existed and that he issued the requested search warrant. Plaintiff's deficient response is: "If a magistrate judge found probable cause to issue a search warrant why is there no record anywhere stating such a warrant was issued? This is the very reason why postal inspectors waited five (5) months after the alleged crime ro break the law and force their way into Plaintiff's home without a warrant, because a search warrant never existed or probable cause. Probable cause only existed due to the prejudice and total abuse of [discretion] by J. St. Eve.. i.e. 9-9-2004, 9-28-2004 and 9-30-2004." But legal arguments and conclusions are not "facts." Plaintiff's response to Defendants' proposed undisputed facts is not in compliance with Rule 56.1(b)(3)(A). Accordingly, Defendants' proposed undisputed facts are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B).

Because Plaintiff is proceeding *pro se*, the Court will consider the factual assertions he makes in his response, but only to the extent that Plaintiff could properly testify about the matters asserted at trial – that is, only with respect to those facts within Plaintiff's personal knowledge. See FED. R. EVID. 602.

## UNDISPUTED FACTS

On January 4, 2004, Silvia Carrier, a postal inspector with the United States Postal Inspection Service, applied for a warrant to enter Plaintiff's apartment and search for various items, including handguns and ammunition. (Defs.' 56.1(a)(3) Statement ¶ 1.) In support of that application, Carrier submitted an affidavit stating that: (1) she was investigating an armed robbery of a postal truck; (2) Richard Johnston, who had been arrested based on fingerprints found on the postal truck, had identified Plaintiff as the gunman during the armed robbery; (3) Plaintiff was on parole and had been incarcerated in the Illinois Department of Corrections on five occasions; (4) according to Johnston, Plaintiff owned two firearms and "always had a gun with him;" and (5) based on Carrier's training and experience, individuals who participate in armed robberies are likely to keep firearms for long periods of time because firearms are difficult to obtain, particularly for convicted felons. (*Id*. at ¶ 2.) A magistrate judge found that probable cause existed and issued the requested search warrant. (*Id*. at ¶ 3.)

The warrant was executed shortly after 6:00 a.m. on January 12, 2004. The search was considered a "higher risk" search due to Plaintiff's criminal record and because the postal inspectors were searching for handguns and ammunition. (Defs.' 56.1(a)(3) Statement ¶ 4.) Seven postal inspectors, including Carrier, Joselito Rocamora, John Donnelly, Lee Jones, and Bruce Babic, entered Plaintiff's apartment building to conduct the search while three other postal inspectors remained outside. (*Id*. at ¶ 5.) Donnelly was armed with an MP5 submachine gun and

the other postal inspectors were armed with handguns. (*Id*. at ¶ 6.) Donnelly stood to the right of Plaintiff's door, and Jones, who had a sledgehammer, stood to the left of the door. The other five postal inspectors lined up behind Donnelly and Jones in the hallway. (*Id*. at ¶ 7.) Jones and Donnelly knocked on the apartment door and yelled, "Police. We have a search warrant. Open the door." Jones and Donnelly repeated this warning four times with no response. (*Id*. at ¶ 8.)

Jones and Donnelly began hitting the door with the sledgehammer. At that point, a male voice from inside the apartment said, "Hold on. I'll open the door." The occupant of the apartment was unable to open the door so Jones hit the door again and it opened. (Defs.' 56.1(a)(3) Statement ¶ 9.) Donnelly pointed his weapon, with its attached flashlight, into the dark apartment and saw Plaintiff standing in the apartment dressed in boxer shorts and a tank top. (*Id*. at ¶ 10.) Donnelly told Plaintiff to keep his hands raised and to step out into the hallway. When Plaintiff did so, Donnelly told him to lie flat on the floor with his hands out where he could see them. (*Id*. at ¶ 11.) Donnelly covered Plaintiff with his weapon in the hallway outside of the apartment for approximately a minute while the other postal inspectors entered the apartment to clear it of any other occupants. (*Id*. at ¶ 12.) During this time, Donnelly never stood closer than five feet to Plaintiff out of concerns for officer safety because Plaintiff could have been armed or he could have lunged at Donnelly or other agents to try to get their weapon. (*Id*. at ¶ 13.) After this minute, and not finding any other occupants in the apartment, Postal Inspector Zielke came out of the apartment, handcuffed Plaintiff, helped him to his feet, told him to face the wall, and searched him for weapons. (*Id*. at ¶ 14.)

Approximately five minutes after Zielke came out of the apartment, Donnelly was directed to enter the apartment and search Plaintiff's bedroom. (Defs.' 56.1(a)(3) Statement ¶ 15.) Donnelly did not bring Plaintiff into the apartment. When Donnelly entered the apartment he saw

Plaintiff in the living room with Rocamora and Carrier. (*Id*. at ¶ 16.) During the five minutes that Donnelly was in the hallway, other postal inspectors videotaped the apartment, labeled the rooms, and prepared the rooms for a search. (*Id*. at ¶ 17.)

Approximately a half-hour into the search, Donnelly, who was in the bedroom, was told to get Plaintiff a pair of pants. Donnelly grabbed a pair of pants, searched the pockets, and tossed them to another postal inspector who was standing outside the bedroom. (Defs.' 56.1(a)(3) Statement ¶ ¶ 18-19.) While searching Plaintiff's bedroom, Donnelly found some bullets which he labeled and gave to the evidence custodian, Inspector Natalie Reda, when she came to bedroom door. (*Id*. at ¶ 20.) After Donnelly entered the bedroom, the only time he recalls seeing Plaintiff was when he tossed Plaintiff's pants to the other postal inspector. (*Id*. at ¶ 21.)

Rocamora, the supervising agent, interviewed Plaintiff in the living room between 6:55 a.m. and 11:45 a.m. (Defs.' 56.1(a)(3) Statement ¶ 22.) Before the interview began, Rocamora removed Plaintiff's handcuffs, allowed him to put on pants, and advised him of his *Miranda* rights. During the interview, Plaintiff was given chips, cigarettes and coffee. (*Id*. at ¶ 23.) According to Rocamora, Plaintiff was shown a copy of the search warrant before he was interviewed and a copy of the search warrant and inventory sheet were left in the apartment after the interview. (*Id*. at ¶ 24.) Plaintiff agreed to talk to Rocamora, and Plaintiff, Rocamora and Carrier sat in the living room during the interview. Rocamora was with Plaintiff the entire time he was interviewed in the apartment. (*Id*. at ¶ 25.)

When Plaintiff was first asked about the robbery, he denied any involvement. However, ten to fifteen minutes after the interview started, Plaintiff admitted his involvement in the armed robbery. He admitted to committing the robbery with two other individuals, whom he identified by name. (Defs.' 56.1(a)(3) Statement ¶ 26.) According to Plaintiff, he was not lying when he

initially denied involvement in the robbery; he was merely "minimizing the truth." According to Rocamora, it is not unusual for suspects to initially deny involvement in a crime. (*Id*. at ¶ 27.) Plaintiff then asked about potential benefits for cooperating with the investigation and Rocamora listened while Plaintiff spoke by speaker phone to the Assistant State's Attorney handling the case. (*Id*. at ¶ 28.) Plaintiff agreed to cooperate with the investigation and he waived his right to immediately appear before a magistrate judge. (*Id*. at ¶ 29.) After the interview, Rocamora handcuffed Plaintiff, drove him to his office, and placed him under arrest. (*Id*. at ¶ 30.)

The following day, Plaintiff, while wearing a recording device, met with one of the individuals he had identified as taking part in the robbery. (Defs.' 56.1(a)(3) Statement ¶ 31.) After Plaintiff's recorded meeting, Rocamora took Plaintiff to the magistrate judge and then to the Metropolitan Correctional Center. According to Rocamora, Plaintiff's demeanor was jovial when they were going to the MCC and Plaintiff hugged Rocamora before he left the MCC. (*Id*. at ¶ 32.)

Later, in connection with his criminal trial, Plaintiff filed two motions to suppress the evidence obtained from his apartment and the statements he made to Rocamora. Plaintiff claimed that he was coerced into confessing because an unidentified postal inspector pulled him from his apartment, slammed him against the wall, handcuffed him, and pointed a rifle to the back of his head while refusing to show him a search warrant. Plaintiff also claimed that he was coerced into confessing because Donnelly came out of the bedroom, pulled his handgun out of its holster, pointed the gun at Plaintiff's forehead, cursed, and screamed at Plaintiff that he had better stop lying. Plaintiff claimed that the evidence obtained from his apartment should be suppressed because the search warrant in his possession contained only a stamped copy of the magistrate judge's signature and because the affidavit in support of the application for the search warrant lacked facts sufficient to establish probable cause. (Defs.' 56.1(a)(3) Statement ¶ 33.)

The district court conducted a two-day evidentiary hearing on Plaintiff's motions to suppress. During the hearing, the district court heard testimony from Donnelly, Rocamora, Plaintiff, Plaintiff's former neighbor, and Plaintiff's adult son. The district court reviewed Rocamora's January 12 interview memorandum and Plaintiff's signed January 12 waiver of his right to appear before a magistrate judge. (Defs.' 56.1(a)(3) Statement ¶ 34.) Donnelly and Rocamora testified as to the events as outlined above. (*Id*. at ¶ 35.) Donnelly also testified that he had no physical contact with Plaintiff, that he saw no one slam Plaintiff against a wall, and that he never pointed a gun at Plaintiff's forehead or screamed at him to quit lying. (*Id*. at ¶ 36.) Rocamora testified that Plaintiff never complained to him about his treatment by any postal inspector and that he never indicated to Rocamora that his cooperation was not voluntary or that it was coerced. Rocamora also testified that no one yelled at Plaintiff to quit lying and no one put a gun to his forehead. (*Id*. at ¶ 37.) Plaintiff admitted during the hearing that he had met with the prosecutor on four separate occasions and never mentioned to her that someone had put a gun to his head or threatened him. He further admitted that he was involved in the robbery. (*Id*. at ¶ 38.)

The district court, after reviewing the information contained in the affidavit in support of the search warrant application, found that the affidavit established the requisite probable cause. (Defs.' 56.1(a)(3) Statement ¶ 39.) The court additionally ruled that even if the affidavit on its face did not support probable cause, an objectively reasonable officer could rely on the warrant, and the postal inspectors in this case reasonably relied on the warrant in objective good faith. (*Id*. at ¶ 40). As to Plaintiff's argument that the search warrant in his possession was deficient because it contained only a stamped signature of the magistrate judge, the district court reminded Plaintiff that she had addressed this issue twice before and reiterated that the issue was irrelevant because there was no allegation, or even suggestion, that the magistrate judge did not in fact approve the search

warrant. The district court also noted that the original search warrant had been located and shown to Plaintiff. (*Id*. at ¶ 41.)

The district court rejected Plaintiff's testimony that the search took place on January 10 rather than January 12. The district court found that the officers' testimony and documentation provided more than sufficient evidence that the search took place on January 12, but even if the search had taken place on January 10, it would be irrelevant because the search warrant was approved on January 9. (Defs.' 56.1(a)(3) Statement ¶ 42.) The district court also found that the testimony of Plaintiff, Plaintiff's neighbor, and Plaintiff's adult son that the search began between 4:45 a.m. and 5:00 a.m., rather than 6:15 a.m. and 6:30 a.m., was not as credible as the officers' testimony, and concluded that the search began after 6:00 a.m. Furthermore, the district court found that even if the search began at 6:00 a.m., Plaintiff failed to show that he was prejudiced by an early start to the search, and "given the fact that Mr. Ross had participated in an armed robbery, that he was a convicted felon, that he had been armed, that they thought they would find a firearm in there, it was certainly reasonable for the agents to have gone at a time when they thought he would still be sleeping and be able to gain surprise on him." (*Id*. at ¶ 43.) Lastly, the district court rejected Plaintiff's argument that he was coerced, finding Plaintiff's testimony regarding the alleged coercive tactics to be unbelievable and the testimony of Donnelly and Rocamora to be credible and consistent. Accordingly, the district court found that there was no physical intimidation, and that Plaintiff had confessed voluntarily. (*Id*. at ¶ 44.)

Plaintiff was convicted and sentenced. Plaintiff appealed his conviction and sentence, raising, among other aspects, the district court's credibility findings regarding Donnelly's and Rocamora's testimony that Plaintiff was not threatened or coerced in any way. The appellate court reviewed Donnelly's, Rocamora's and Plaintiff's testimony, and stated that Plaintiff's version of

the events "strains imagination." *United States v. Ross*, 510 F.3d 702 (7th Cir. 2007). Noting that during the course of four meetings with the prosecutors before trial, Plaintiff never mentioned being threatened at gunpoint or coerced into confessing, the appellate court found "it unlikely that Ross was threatened into confessing on one day and contentedly cooperated with police on the next." The appellate court held that the district court did not clearly err when it accepted Donnelly's and Rocamora's version of events. (Defs.' 56.1(a)(3) Statement ¶ 45; *Ross*, 510 F.3d at 707-09.) The appellate court reviewed *de novo* Plaintiff's claim that the conditions of his interview were coercive and found that the conditions were not coercive and that Plaintiff's confession, coming only ten to fifteen minutes into the interview, was voluntary. (*Id*. at ¶ 46; *Ross*, 510 F.3d at 709-10.)

In his complaint, Plaintiff alleges that the postal inspectors violated his constitutional rights when they forcibly entered his apartment at 4:30 a.m. without a search warrant, snatched him from his apartment, slammed him against the wall, and put a rifle to the back of his head while searching his apartment. He further alleges that Donnelly violated his constitutional rights by pointing a handgun to his forehead while yelling at him to stop lying, which caused him to confess to the armed robbery. (Defs.' 56.1(a)(3) Statement ¶ 48.)

During his deposition, Plaintiff testified that he believes no search warrant existed when the postal inspectors came to his home because neither Donnelly nor Rocamora responded to his request for a search warrant when he was in the hallway and when they first entered the apartment. He further testified that he has a secret reason for believing that no search warrant existed, but he refused to disclose that reason. (Defs.' 56.1(a)(3) Statement ¶ 49.) Plaintiff believes that Jones, Babic, Carrier, and Rocamora violated his constitutional rights because they were involved in a search that he believes was unauthorized. (*Id*. at ¶¶ 50-53.) Plaintiff believes that Donnelly violated his constitutional rights when he snatched him from his apartment, slammed him against

a wall, and put a rifle to the back of his head. Further, Donnelly, later put a gun to Plaintiff's forehead and coerced him to confess. (*Id*. at ¶ 54.)

## ANALYSIS

### I. Existence and Sufficiency of Warrant

Plaintiff alleges that the postal inspectors did not have a search warrant to search his home. Contrary to his allegation, a search warrant signed by Magistrate Judge Levin was issued on January 9, 2004, for the search of Plaintiff's apartment. Thus, no reasonable jury could conclude that no search warrant existed when the postal inspectors searched Plaintiff's apartment.

Plaintiff also appears to be alleging that the search warrant was deficient in some respect. Plaintiff made the same argument in his motions to suppress that he filed in his criminal case. Defendants argue that any claims based on the allegations of a deficiency in the warrant are barred by the doctrine of collateral estoppel.

Collateral estoppel, also referred to as issue preclusion, bars the relitigation of issues already litigated and decided in a prior proceeding. *See Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Collateral estoppel can bar a plaintiff from litigating a Fourth Amendment search-and-seizure claim that he lost at a criminal suppression hearing. *See Allen v. McCurry*, 449 U.S. 90, 104-05 (1980); *Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir. 1984). A claim is barred by the doctrine of collateral estoppel if: (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom issue preclusion is invoked was represented in the prior action. *See Adair*, 230 F.3d at 893.

All four elements are present in the instant case. Plaintiff filed motions to suppress in his criminal case in which he argued that the warrant was deficient because there was no probable

cause to support it, because it contained only a stamped signature of the magistrate judge, and because it was executed at a time earlier than authorized on the face of the warrant. The district court held a two-day hearing on the motions that included the testimony of five witnesses and a review of relevant documents. The district court found that the search warrant was not deficient. That determination was essential to the district court's decision to deny Plaintiff's motions. Lastly, Plaintiff was the defendant in the criminal case and filed the motions; thus, he was represented in the action. Accordingly, Plaintiff is barred by the doctrine of collateral estoppel from arguing that the search warrant was deficient in some respect.

Furthermore, even if the warrant was deficient in some manner, the postal inspectors are entitled to qualified immunity for their participation in the search of Plaintiff's apartment.

An officer conducting a search is entitled to qualified immunity if "a reasonable officer could have believed" that the search was lawful "in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*. 483 U.S. 635, 641 (1987). In making this determination, the central question is whether someone in the officer's position could reasonably but mistakenly conclude that his conduct complied with the Fourth Amendment. *Anderson*, 483 U.S. at 641. Once the affirmative defense is raised, the plaintiff bears the burden of defeating. *See Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008).

Here, Plaintiff has not produced any evidence demonstrating that a reasonable officer in the postal inspectors' position would have believed that the search warrant they were executing did not comport with the Fourth Amendment. Furthermore, the issue is also barred by the doctrine of collateral estoppel because the district court found that an objectively reasonable officer could rely on the warrant that was executed and that the postal inspectors reasonably relied on the warrant in

objective good faith.

## II. Excessive Force Claim

Plaintiff also alleges that Donnelly twice used excessive against him on the day of the search: (1) while they were in the hallway waiting for the other postal inspectors to clear the apartment, Donnelly allegedly grabbed Plaintiff, flung him into the wall, and pointed a rifle at the back of his head; and (2) while Plaintiff was talking to Rocamora, Donnelly allegedly rushed out of Plaintiff's bedroom, pointed his handgun at Plaintiff's forehead, and screamed at Plaintiff to stop lying.

The doctrine of collateral estoppel also bars Plaintiff's claims of excessive force by Donnelly because the same issues were litigated in Plaintiff's criminal case. In his suppression hearing, Plaintiff argued that his confession was coerced because of the same alleged conduct by Donnelly as in the instant case. The district court conducted an evidentiary hearing after which the district court found that Plaintiff's version of the events was not believable and that Plaintiff was not threatened or coerced in any manner. The district court's finding was upheld on appeal, with the appellate court noting that Plaintiff's version of the events "strains imagination." The district court's determination that Plaintiff was not threatened or coerced in any manner was essential to its decision to deny Plaintiff's motion to suppress his confession. Plaintiff was the defendant in that criminal case and filed the motion to suppress. Accordingly all of collateral estoppel elements are present. Thus, Plaintiff is barred by the doctrine of collateral estoppel from arguing that Donnelly physically threatened and coerced him into confessing.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary for summary judgment is granted. The Clerk is directed to enter judgment in favor of the remaining Defendants pursuant to

FED. R. CIV. P. 56.  The case is terminated.


Dated: July 31, 2009                        _____/s/_____
                                            Joan B. Gottschall
                                            United States District Court Judge